TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER P. ROBBINS (Cal. Bar No. 251845)
Assistant United States Attorney
    1000 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2400
    Facsimile: (213) 894-2927
    Email:    Alexander.P.Robbins@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-555-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT JANSEN'S RESTITUTION OBLIGATION |
| v. | |
| MARK ALBERT JANSEN,<br>   aka "Ffglvr," | Hearing Date: July 12, 2022 |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Alexander P. Robbins, files its sentencing position relating to defendant Mark Albert Jansen's mandatory restitution obligation.

    The government's position regarding sentencing is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Report ("PSR"), the attached Victim Impact Statements, the Victim Impact Statements previously filed with the government's initial sentencing position (Dkt. 49-1), and any other evidence or argument that the Court may wish to

1

consider at the time of sentencing. The government respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

DATED: June 28, 2022

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


 /s/ Alexander P. Robbins
ALEXANDER P. ROBBINS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant downloaded videos of young children being raped and sexually abused.  (Plea Agreement, Dkt. 42, ¶ 15 (e.g., a file named "2011 baby. Nice orgasm from 4yo girl.mpg"); see also PSR ¶¶ 16-17.) Defendant possessed at least 600 images or videos of child pornography.  (Plea Agreement ¶ 17.)

Defendant was charged (Dkt. 1) with three counts of knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), (b)(1), and one count of knowingly possessing prepubescent child pornography, in violation of § 2252A(a)(5)(B), (b)(2).  He agreed to plead guilty to the single count of possession in exchange for the government's agreeing to dismiss the five-year mandatory-minimum charges; he also agreed to accept a sentence of 42 months' imprisonment pursuant to a Rule 11(c)(1)(C) plea and to pay restitution to any victim of his relevant conduct, beyond just the single offense of conviction to which he was pleading guilty.  (Plea Agreement ¶ 10, Dkt. 42.)  The Court sentenced defendant to 12 months in prison, to be followed by two years of home confinement as part of his ten years of supervised release.  (Dkt. 71.)

Now the question before this Court is what restitution defendant owes to the victims of his crimes.  The government has received restitution requests from 13 girls and young women who were sexually abused and whose sexual abuse was recorded and ultimately received by defendant.  (The supporting documents are cited by USAO Bates number as produced to the defense; these documents are being filed under seal.)  The Victim Impact Statements for (pseudonymous) victims **Erika, Henley, Jenny,** and **Pia** were attached to the government's previously filed sentencing memorandum (Dkt. 49-1); the

Victim Impact Statements for **Cara**, **Lily**, **Patty**, **Sarah**, **Sierra**, **Savannah**, **Skylar**, **Sally**, and **Violet** are attached to this memorandum.[1] As explained below, the government has made an independent assessment of the appropriate restitution due to each victim and is <u>not</u> necessarily requesting the amounts sought by each victim:

| Victim and Series | Victim Documents (USAO_) | NCMEC Report (USAO_) / # Files | Restitution Sought (victim / gov't) |
|---|---|---|---|
| **Erika**, PinkHeartSisters1 | 1012-1073 | 2558 (1) | $3,000 (victim) **$3,000** (gov't) |
| **Henley**, Blue Pillow1 | 1074-1081, 1298-1300 | 2462 (1) | $5,000 (victim) **$1,500** (gov't) |
| **Jenny**, Jenny (series) | 1082-1207, 1301 | 2513 (5) | $3,000 (victim) **$3,000** (gov't) |
| **Pia**, Sweet White Sugar | 1220-1231, 1305-1310 | 2583 (10) | $5,000 (victim) **$4,000** (gov't) |
| **Cara**, MotorCouch | 1313-1353 | 2551 (2) | $5,000 (victim) **$3,000** (gov't) |
| **Lily**, Vicky (series) | 1354-1618 | 2593 (9) | $10,000 (victim) **$4,700** (gov't) |
| **Sarah**, Marineland1 | 1620-1922 | 2541 (3) | $10,000 (victim) **$2,800** (gov't) |
| **Sierra**, **Savannah**, **Skylar**, & **Sally**, Jan_Socks | 1923-2164 | 2509-2512 (5,1,6,2) | $10,000, $7,500, $7,500, $7,500 (victim) **$3,400, $3,800, $4,800, $3,400** (gov't) |
| **Violet**, Violet (series) | 2165-2433 | 2453 (1) | $10,000 (victim) **$1,700** (gov't) |
| **Patty**, Linda&Patty1 | 2603-2838 | 2536 (4) | $3,000 (victim) **$3,000** (gov't) |

---

[1] Following the defense's objection (Dkt. 55), the government was unable to confirm that some of the individuals referred to in its initial sentencing memorandum -- specifically, Tori, Mya, and Ava (USAO_1000-1011, 1208-1219, 1232-1293) -- were depicted in defendant's child-pornography collection.  Government counsel has discussed this issue with defense counsel, and the government is withdrawing its request for restitution to these individuals.

**Legal Principles**

As noted, defendant has agreed to pay restitution based on relevant conduct and not merely the offense of conviction. (Plea Agreement ¶ 10.) See also 18 U.S.C. § 3663(a)(1)(A). Restitution is mandatory under 18 U.S.C. § 2259, but because the offense conduct took place before the amendment to that provision in December 2018, there is no statutory minimum of $3,000. (See also PSR ¶ 19 n.1.) The policy considerations behind that amendment, however, see § 2259(b)(2)(B), can still be considered by this Court in the exercise of its discretion. See Pub. L. 115-299, § 2, 132 Stat. 4383 (2018).

Possession, receipt, and distribution of child pornography are not "victimless crime[s]." Paroline v. United States, 572 U.S. 434, 458 (2014). "[E]very viewing of child pornography is a repetition of the victim's abuse." Id. at 457; see also United States v. Boos, 127 F.3d 1207, 1211 (9th Cir. 1997). That is why Congress has made restitution for these crimes mandatory: "to impress upon offenders that their conduct produces concrete and devastating harms for real, identifiable victims." Paroline, 572 U.S. at 457.

Under 18 U.S.C. § 3663A, victims are entitled to restitution in "an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment." 18 U.S.C. § 3663A(b)(2). And under 18 U.S.C. § 2259 (the prior version, 2016-2018, in effect at the time of the offense), victims are entitled to "the full amount of the victim's losses," including:

  (A) medical services relating to physical, psychiatric, or psychological care;

  (B) physical and occupational therapy or rehabilitation;

  (C) necessary transportation, temporary housing, and child care expenses;

  (D) lost income;

  (E) attorneys' fees, as well as other costs incurred; and

  (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3) (2016); see also 18 U.S.C. § 2259(a) (covering offenses "under this chapter," i.e., Chapter 110, which encompasses § 2252A); Paroline, 572 U.S. at 443.

  Calculating exact amounts of restitution with certainty will often be impossible. As with any restitution, the Court need only make "a reasonable estimate of the loss, given the available information," United States v. Ali, 620 F.3d 1062, 1074 (9th Cir. 2010), and do so by a preponderance of the evidence, 18 U.S.C. § 3664(e). And in the context of child pornography specifically, the Supreme Court has avoided "prescrib[ing] a precise algorithm for determining the proper restitution amount." United States v. Grovo, 826 F.3d 1207, 1221 (9th Cir. 2016). "[P]recision is neither expected nor required." United States v. Galan, 804 F.3d 1287, 1291 (9th Cir. 2015).

  Although this Court has "wide discretion" to reasonably estimate defendant's restitution liability, Paroline, 572 U.S. at 462, there are a few legal errors it must avoid:

  (1) Although the Court can consider the same factors that Congress considered in setting a $3,000 restitution floor --

4

including the fact that this was a reasonable, ballpark amount before the 2018 amendments (see, e.g., United States v. Banuelos, CR No. 20-237-FMO, Dkt. 61 ($3,000 each for 31 victims under pre-amendment statute)) -- the Court cannot treat the $3,000 amount as mandatory. United States v. Ordonez, 831 F. App'x 293, 294 (9th Cir. 2020).

(2) The Court cannot include in the restitution amounts losses due to the original sexual abuse: "the losses, including ongoing losses, caused by the original abuse of [each] victim should be disaggregated from the losses caused by the ongoing distribution and possession of images of that original abuse, to the extent possible." Galan, 804 F.3d at 1291.

(3) The Court cannot balance a defendant's need for money against the needs of his victims: the defendant is liable to his victims regardless of his "economic circumstances." 18 U.S.C. § 2259(b)(4)(B)(i).

**Defendant's Victims**

Applying these principles, this Court should not award the full amounts of restitution requested by each of the 13 victims. (Which would total $86,500.) But the Court must award some restitution to each victim: as noted above, it is undisputed that each victim was in defendant's child-pornography trove. (And as the government understands it, there are no factual disputes left -- only legal ones.) So the question is how much: what proportion of the victims' damages is defendant is responsible for? For each victim, the answer is something rather than nothing.

The government's chart above presents its own estimates, some of which are lower than the restitution amounts sought by the

victims. The government's estimates are (briefly) justified below, citing selections from the thousands of pages of documents submitted by the victims in this case.[2] But the government respectfully requests that the Court review the underlying submissions by the victims themselves, and if the Court agrees with a victim's higher amount to use that amount instead of the government's. Each victim in this case has a right "to be reasonably heard" before this Court. 18 U.S.C. § 3771(a)(4).

The case of **Patty** is illustrative of a restitution request that is supported by facts and avoids the legal errors noted above. **Patty** was abused when she was ten years old by a family acquittance at Disneyworld. That was in the 1970s. (USAO 2608.) Only in December 2020 did she discover that the photographs her abuser took of her were available on the internet (id.):

> I was shocked and appalled. I felt like I was going to vomit. It was like a scab that is trying to heal being torn off -- raw, pounding pain. At this time, I was still learning how to cope and how to live a normal life. I thought that my photographs had been destroyed . . . in the mid-1970s. I was shocked and felt betrayed. It was then that I realized that this nightmare never went away at all, and this scary reality replays in my mind, as hundreds of perpetrators all across the world have continued access to my body whenever they want it.
>
> To make matters worse, I held on to the secret of my abuse. I did not tell my husband or my daughter about my abuse until several months ago after learning from the FBI that my images were being viewed by people online -- images that I thought had been destroyed decades ago. I

---

[2] The Victim Impact Statements are being filed publicly with this pleading, but the broader set of documents (including loss calculations, legal argument, and supporting documentation from the victims) are being filed under seal. These documents comprise 1,742 PDF pages Bates labelled USAO_1012 through USAO_2838. (Some irrelevant pages in this range, although produced to the defense, have been removed from this filing with the Court.) The PDF pages have been made text-searchable and have been numbered to correspond to each page's Bates label (so, for example, putting in "1097" will take the reader to USAO_1097).

6

        could not process this news on my own, but I don't feel comfortable putting the weight of this information completely on my husband or on my daughter, either. So, I have decided to seek professional help to assist me in processing my reopened wounds.

**Patty**'s restitution request of $3,000 clearly acknowledges that the amount is non-mandatory, and it distinguishes between the harm from **Patty**'s sexual abuse 50 years ago and the harm caused by men like defendant, <u>today</u>, trafficking in the images of that abuse. (USAO 2603-2604.) This estimate avoids all three of the legal errors identified above (specifically addressing disaggregation and the non-mandatory nature of the $3,000 estimate) and is supported by documented expense estimates falling squarely within the restitution statute. <u>See</u> 18 U.S.C. § 2259(b)(3)(A) ("medical services relating to physical, psychiatric, or psychological care"). Because **Patty** went for so many years believing that her images had been destroyed, her financial harms -- $125/week in psychological care for the foreseeable future -- are necessarily caused by "the ongoing distribution and possession of images of that original abuse" rather than the abuse itself. <u>Galan</u>, 804 F.3d at 1291. Defendant should at least be required to pay for 24 such weekly sessions for **Patty**.

**Henley**, by contrast -- though she is certainly a victim of defendant -- has not established entitlement to the full amount of restitution ($5,000) she is requesting. That does not mean she is not a victim at all: Henley was only five when she was first abused by her father, and defendant had one of her images. (USAO 1298, 2462.) But her restitution request establishes only about $20,000 in quantifiable financial harm (not counting a vocational assessment, which at the time of the letter had not been done) and contains no estimate of future therapy costs or reduced earnings.

(USAO 1076, 1078.) Nor does her request acknowledge that, in this case, there is no $3,000 minimum. The government respectfully requests $1,500 for **Henley**.

Somewhere between the two in terms of justification is **Jenny**'s restitution request, which acknowledges the disaggregation issue (USAO 1093-1094, 1107) but does not quantitatively evaluate the separate harm stemming from the circulation of the videos and images. (And these are particularly horrible images, involving bestiality and bondage of a seven-year-old girl, USAO 1097, 1107-1109.) That said, given an estimate of $175 per week for counseling over ten years (approximately $100,000) and $1.6 million in reduced earnings under the most conservative estimate (USAO 1161),[3] **Jenny**'s request for $3,000 of restitution from defendant is a reasonable one. This is especially true given that defendant possessed not one or two but <u>five</u> images of **Jenny** being abused. <u>Paroline</u>, 572 U.S. at 460 ("how many images of the victim the defendant possessed" is one of the factors to be considered in estimating restitution).

Likewise, **Erika**'s $3,000 request -- reflecting relatively recent harm and an estimated $20,500 in costs for future psychological and economic reports alone (USAO 1013) -- is also reasonable based on the information available. **Cara** is similarly situated ($24,000-$38,000 in upcoming treatment, USAO 1314) and so she, too, should be awarded $3,000 (less than the $5,000 she requested). The same analysis applies to **Pia** ($25,000-$40,000 up-front initial expenses, USAO 1228), which would otherwise lead the

---

[3] The government does not rely on or include the approximately $2.8-million estimate of Jenny's reduced quality of life (USAO 1163), though certainly the substantial harm inflicted on this victim is something the Court should consider under 18 U.S.C. § 3553(a)(1).

8

government to request $3,000 for her, as well -- except that defendant had <u>ten</u> images of her, far more than any other victim except Lily. Accordingly, the government requests $4,000 for Pia.

Other victims -- **Lily**, **Sarah**, and **Violet** -- have relatively precise estimates of total disaggregated damages under <u>Galan</u> but restitution requests that do not necessarily account for the fractional or proportional harm caused by this particular defendant. Each of these victims (represented by the same law firm) requests $10,000 in restitution, but each request also states that a significant number of restitution orders have already been entered for each victim: 1,630 such orders for **Lily** (USAO 1355), 996 for **Sarah** (USAO 1621), and 452 for **Violet** (USAO 2172). <u>See</u> <u>Paroline</u>, 572 U.S. at 460 (relevant factor is the "number of past criminal defendants found to have contributed to the victim's general losses"). Dividing each victim's disaggregated losses ($6,008,536, $2,758,335, and $758,343, respectively) by the total number of other criminal defendants found liable for those losses yields figures significantly less than $10,000: approximately $3,700, $2,800, and $1,700, respectively, rounded to the nearest hundred. The government according requests those amounts for these victims, as reflected on the chart above, except that given the large number of images of **Lily** the government requests $4,700 for her.

The last four victims -- **Sierra**, **Savannah**, **Skylar**, and **Sally** (USAO 1923-2164) -- were sisters who grew up imprisoned in their own home. There were "cameras everywhere" (USAO 1927), and they were kept "isolated" and "not allow[ed] . . . to attend public school." (USAO 2056.) The sisters were forced to have sex with their abuser and with each other, often with one of them videotaping it so that

9

their abuser could trade the video and images for still more child pornography on the internet. (USAO 1923-1924.) The harm suffered by these girls when men like defendant view their rape videos is not only "a repetition of" their abuse but a central purpose of it. Id. at 457. To grow up like this must be horrible beyond imagination. And because their videos and images are on the internet -- including, on defendant's computer, seven of **Sierra**, one of **Savannah**, six of **Skylar**, and two of **Sally** (USAO 2509-2512; see also USAO 1923 (listing the numbers corresponding to each name)) -- these victims can never completely be free of their abuse.

Their amounts requested, however, are (unfortunately) too high as a legal matter. Not because they don't need the restitution or deserve it, but because the amounts requested are not sufficiently tied to harm proximately caused by defendant under Paroline. **Sierra**, in particular, claims "disaggregated" damages of more than $1 million, though her advocates also state that disaggregation is "not factually appropriate" because "the images and videos were made for the purpose of distributing on the internet." (USAO 1930.) The government respectfully disagrees, see Galan, 804 F.3d at 1291, and does not believe that the more than $600,000 Sierra requests for medical expenses can be proximately attributed to defendant. Taking the most conservative remaining figures, then, leaves a total loss amount for Sierra of approximately $239,000 -- and (approximate) loss amounts for the other three girls of $383,000, $379,000, and $335,000. (USAO 1934-1936.) Their restitution submissions do not provide the number of other restitution awards received or any estimate of the number of criminals who have possessed their images, but assigning even 1% of their disaggregated harm to this defendant

-- and then increasing **Sierra**'s and **Skylar**'s share by $1,000 because defendant possessed numerous images of those two girls -- yields estimated restitution amounts (rounded to the nearest hundred) of $3,400, $3,800, $4,800, and $3,400, as listed in the chart above.

These are all best estimates; precision is not required. Galan, 804 F.3d at 1291.  The key is that real victims suffered real harms at the hands of defendant, and that this was not "a victimless crime."  Paroline, 572 U.S. at 458.  Thus the question is not whether defendant harmed these children but how much he did so.  The thousands of pages of documents submitted by these 13 victims allow reasonable estimates of that harm.  Whatever room there may be for reasonable disagreement as to the amounts, those amounts are more than nothing.

### CONCLUSION

The government requests that the Court order defendant to pay **$42,100** in total restitution, in the amounts and to the victims set forth in the chart above: $3,000 to **Erika**; $1,500 to **Henley**; $3,000 to **Jenny**; $4,000 to **Pia**; $3,000 to **Cara**; $4,700 to **Lily**; $2,800 to **Sarah**; $3,400 to **Sierra**; $3,800 to **Savannah**; $4,800 to **Skylar**; $3,400 to **Sally**; $1,700 to **Violet**; and $3,000 to **Patty**.

DATED: June 28, 2022
TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

 /s/ Alexander P. Robbins
ALEXANDER P. ROBBINS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA